UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

AMADOU KONTEYE,

                              Plaintiff,

         -against-

NEW YORK CITY DEPARTMENT OF EDUCATION; JOSEPH D. GATES,

                             Defendants.

**LOCAL CIVIL RULE 56.1 STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

17 CV 2876 (GBD) (RL)

------------------------------------------------------------------------ x

        Defendants, by their attorney, Zachary W. Carter, Corporation Counsel of the City of New York, respectfully submit, pursuant to Rule 56.1 of the Local Rules of this Court, that the following facts are undisputed:

**A. Background**

    **a. Per Diem Service and Payroll Statuses**

        1.    The Board of Education of the City School District of the City of New York, operating as the New York City Department of Education ("DOE") maintains pedagogic personnel which serve on a day to day basis. Such employees are typically referred to as substitutes, per diem employees, or day-to-day substitutes.[1] *See* Exhibit ("Ex.") "A," Affidavit of Richard Benvisto ("Benvisto Aff."), ¶¶ 6-7; Ex. "B," Affidavit of Peter Ianniello ("Ianniello Aff."), at ¶ 6.

---

[1] Unless otherwise indicated, all references to exhibits are those annexed to the Declaration of Katerina Souliopoulos ("Souliopoulos Decl.").

2. An occasional per diem substitute is a substitute teacher available to accept assignments at any DOE school on a day-by-day-as-needed basis. *See* Ex. "B," Ianniello Aff., at ¶ 6.

3. Occasional per diem substitutes are paid a fixed rate for services rendered according to contractually negotiated salary schedules. *See* Ex. "A," Benvisto Aff., at ¶ 8-9.

4. In the DOE payroll system, the payroll status of occasional per diem substitutes is referred to as "O-status." *See* Ex. "A," Benvisto Aff., ¶ 10.

5. Occasional per diem substitutes are able to receive a different payroll status, and accordingly a higher rate of pay, depending on (a) whether the substitute covers an absence or vacancy, and (b) how long the substitute covers the exact same assignment. *See* Ex. "A," Benvisto Aff., ¶¶ 11-22.

6. One such status is referred to as Z-status. If an occasional per diem substitute covers the same absented teacher, in the same assignment for thirty or more consecutive days, the occasional per diem substitute is eligible for Z-status. Individuals with Z-status are paid at 1/200th of the salary step (up to step 4A including differentials) that would be entitled on a full-time basis, instead of the occasional daily rate, or O-status. *See* Ex. "A," Benvisto Aff., ¶¶ 12-14, 16.

7. However, if the substitute covers a different absented teacher or a different subject area before completing thirty consecutive days in the same assignment, the substitute is not eligible for Z-status and will remain on O-status. *See* Ex. "A," Benvisto Aff., ¶ 15.

8. When a Z-status employee's assignment concludes, that employee reverts back to an occasional per diem employee on O-status. *See* Ex. "A," Benvisto Aff., ¶¶ 17-18.

9. Q-status is another payroll status the DOE maintains. A substitute may be eligible for Q-status if they cover a vacancy for two or more months until the end of the academic year. *See* Ex. "A," Benvisto Aff., ¶¶ 19-20.

10. A vacancy can either be encumbered or unencumbered. An encumbered vacancy refers to a position for which there is an appointed teacher out on an extended leave. An unencumbered vacancy typically refers to a position at a school which is vacant due to a retirement, resignation, or termination of an appointed teacher. *See* Ex. "A," Benvisto Aff., ¶ 7, fn. 1.

11. A substitute covering a vacancy for two or more months will not automatically be coded as Q-status in the DOE payroll systems. Rather, a substitute who believes they are eligible for Q-status must initiate a grievance through their union to receive Q-status. Such grievances are commonly referred to as "O to Q" grievances. *See* Ex. "A," Benvisto Aff., ¶ 23.

12. Title 8, chapter II, part 80, subpart 5.4 of the Official Codes, Rules, and Regulations of the State of New York provides that any substitute who works more than forty days in the same subject and grade level must either (a) be certified in the subject area for which they are substituting, or, (b) be seeking certification in the subject area for which they are substituting. *See* 8 CRR-NY 80-5.4; *see also* Ex. "B," Ianniello Aff., ¶ 20.

13. For example, if an individual substitute works for more than forty days as a science substitute, that individual must either already have certification from the State of New York in science, or, they must be concurrently seeking certification from the state in science. *See* Ex. "B," Ianniello Aff., ¶ 21.

14. 8 CRR-NY 80-5.4 does not mandate that the DOE employ substitutes who work more than forty days in a full-time capacity. 8 CRR-NY 80-5.4 also does not mandate that the DOE nominate and appoint as teachers all substitutes who work more than forty days. *See* Ex. "B," Ianniello Aff., ¶ 22-23.

### b. DOE Hiring

15. To be hired as a tenure track teacher at the DOE is a multi-step process. As an initial matter, only qualified individuals may be hired as DOE teachers. *See* Ex. "B," Ianniello Aff., ¶ 17.

16. For example, individuals granted either an initial license, professional license, or a permanent license from the State of New York may be hired as DOE teachers, as well as individuals completing a transitional degree or internship in conjunction with a master's degree program. *See* Ex. "B," Ianniello Aff., ¶ 17.

17. Hiring of school personnel is largely at the discretion of a school's Principal, subject to the protections of federal, state and local anti-discrimination statutes. *See* Ex. "B," Ianniello Aff., ¶ 17.

18. After interviewing qualified candidates, it is within a Principal's discretion to make an offer of employment. If an offer of employment is accepted, a Principal will then nominate the prospective employee in the DOE computer system. The prospective employee will then be prompted via email by DOE to complete all remaining background checks and paperwork. If the prospective employee successfully completes all background checks and necessary paperwork, they will then be officially appointed as a DOE teacher. *See* Ex. "B," Ianniello Aff., ¶ 18.

### B. Service History

19. From 2012 until 2017, Joseph Gates served as the Principal of the Frederick Douglass Academy, located at 2581 Adam Clayton Powell Jr. Boulevard, New York, NY 10039. *See* Ex. C, Affidavit of Joseph Gates ("Gates Aff."), ¶ 3.

20. The code used to identify the Frederick Douglass Academy in DOE computer systems is 05M499. *See* Ex. "B," Ianniello Aff., ¶ 7.

21. Plaintiff Amadou Konteye began working for the DOE in March 2005 as an hourly student teacher at the Frederick Douglass Academy. *See* Ex. "B," Ianniello Aff., ¶ 7; Ex. "D," Deposition of Plaintiff taken on May 15, 2018, at 15:21-23.

22. Plaintiff continued working as a student teacher until his graduation from the Frederick Douglass Academy in 2007, whereupon he ceased working for the DOE. *See* Ex. "D," Deposition of Plaintiff taken on May 15, 2018, at 15:21-23.

23. In April 2012, Plaintiff successfully completed all requirements to become an occasional per diem substitute teacher for the DOE. *See* Ex. "E," Substitute Teacher Assessment & Processing Requirements, dated April 30, 2012.

24. Plaintiff thereafter began to work as an occasional per diem substitute teacher at various DOE schools, including the Frederick Douglass Academy. *See* Ex. "B," Ianniello Aff., ¶ 8; Ex. "C," Gates Aff., ¶ 6.

25. Plaintiff worked at the Frederick Douglass Academy as an occasional per diem substitute teacher during the 2012-2013, 2013-2014, 2014-2015, and 2015-2016 academic years, until he and all other substitutes were excessed from the school on February 12, 2016. *See* Ex. "C," Gates Aff., ¶¶ 6, 18.

26. While working as an occasional per diem substitute teacher at the Frederick Douglass Academy, Plaintiff was seeking a master's degree and initial certification

from the State of New York Education Department ("SED") in French grades 7-12 and social studies grades 7-12.  *See* Ex. "C," Gates Aff., ¶ 7.

27. Plaintiff was able to fill a French vacancy at the Frederick Douglass Academy over the years 2012-2016 because he was seeking certification from the State of New York in French.  *See* 8 CRR-NY 80-5.4.

28. During the 2012-2013, 2013-2014, 2014-2015, and 2015-2016 academic years, Plaintiff filled an unencumbered French vacancy at the Frederick Douglass Academy and was compensated according to the contractually negotiated pay schedules for occasional per diem substitute teachers.  *See* Ex. "C," Gates Aff., ¶ 6; Ex. "A," Benvisto Aff., ¶ 29.

29. In anticipation of completing all necessary requirements for an initial teaching certification in French, in or about September 2014, Plaintiff requested that Principal Gates nominate him for teaching positions at the Frederick Douglass Academy.  Plaintiff believed that his nomination would expedite the processing of his applications for initial certification from the State of New York.  *See* Ex. "C," Gates Aff., ¶ 8; Ex. "F," Transcript of Public Employer Relations Board proceeding, In the matter of Amadou Konteye and Department of Education of the City School District of the City of New York and UFT, held on March 23, 2017 ("PERB Transcript"), 28:13-22, 30:20-25, 31:1-14.

30. In response, Principal Gates created four separate letters of nomination on behalf of Plaintiff in June and August 2014, in an effort to expedite the receipt of Plaintiff's initial certifications and begin the 2014-2015 academic year as an appointed teacher.  *See* Ex. "C," Gates Aff., ¶ 8; Ex. "F," PERB Transcript, 28:13-22, 30:20-25, 31:1-14.

31. Plaintiff did not receive his initial certifications in French and social studies until March 18, 2015.  *See* Ex. "D," Deposition of Plaintiff taken on May 15, 2018, at

20:2-25; Ex. "G," Deposition of Plaintiff taken on May 29, 2018, at 139:12-16; Ex. "C," Gates Aff., ¶ 9;.

### C. Budget Crisis and Excessing

32. At the close of the 2014-2015 school year, Principal Gates realized that enrollment for the 2015-2016 school year would likely fall below the projected enrollment numbers, otherwise known as "register projections." *See* Ex. "C," Gates Aff., ¶ 10.

33. The DOE creates and utilizes register projections based on a school's past enrollment numbers to determine how much funding a school will receive for the following academic year. School administrations then create a school's programming for the following academic year based on the anticipated funding derived from the register projections. *See* Ex. "C," Gates Aff., ¶ 10.

34. However, if a school's actual enrollment is less than the register projections, the school will have to return funding to DOE. *See* Ex. "C," Gates Aff., ¶ 10.

35. From his experience as a DOE Principal, Principal Gates knew that if the Frederick Douglass Academy had to return funding, it would be necessary to cut non-essential programming. *See* Ex. "C," Gates Aff., ¶ 11.

36. The French vacancy Plaintiff filled as a per diem and Physical Education positions were identified as positions likely to be cut in the case of returned funding. *See* Ex. "C," Gates Aff., ¶ 11.

37. Principal Gates visited the DOE central offices throughout the summer of 2015 in an attempt to maintain funding levels for the Frederick Douglass Academy, but was unsuccessful. *See* Ex. "C," Gates Aff., ¶ 14.

38. Principal Gates informed Plaintiff of the likelihood of a budget shortfall in the 2015-2016 school year and the likelihood that the French vacancy would be cut as non-essential. *See* Ex. "C," Gates Aff., ¶ 12.

39. Principal Gates then offered Plaintiff a full-time teaching position in social studies as this position was considered essential and would remain intact even in the case of a budget shortfall. However, Plaintiff rejected Principal Gates' offer and insisted that he would like to continue in the French vacancy. *See* Ex. "C," Gates Aff., ¶ 12.

40. Principal Gates then hired David Neville and Kim Aime as social studies teachers for the 2015-2016 academic year. *See* Ex. "C," Gates Aff., ¶ 13.

41. By February 2016, the budget shortfall became a reality. On February 3, 2016 the Budget Division of the Manhattan Field Support Office contacted the Frederick Douglass Academy via email. The Budget Division explained that the Frederick Douglass Academy did not have enough funding to pay the per diem substitutes working at the school at that time. Attached to the February 3rd email were two screen shots of nineteen substitutes for whom there was no funding. Plaintiff's name was included on the list. *See* Ex. "C," Gates Aff., ¶ 15; Ex. "H," Email dated February 3, 2016 from Thomas Croft to Margarita Zapata.

42. The following day on February 4, 2016, the Director of the Budget Division, Ms. Sharon Boonshoft, sent an email following up on the budget issue that was the subject of the February 3rd email. Ms. Boonshoft explained that the Frederick Douglass Academy could no longer utilize substitutes for the remainder of the 2015-2016 school year. Ms. Boonshoft also explained that the school would have to return over $62,000 in funding. *See* Ex. "C," Gates Aff., ¶ 16; Ex. "I," Email dated February 4, 2016 from Sharon Boonshoft to Joseph Gates and Sonia Francis.

43. Due to the budget crisis, Principal Gates met with the school's administration, and over the next two weeks they re-organized the school's entire programming. Specifically, by combining smaller classes and cutting non-essential classes, the administration was able to restructure programming so that appointed teachers would be available to cover any absences for the remainder of the school year, thus preventing any further use of substitute teachers. *See* Ex. "C," Gates Aff., ¶ 17.

44. Consequently, on February 12, 2016 after the reorganization, Principal Gates excessed all substitute teachers working at the Frederick Douglass Academy, including Plaintiff. *See* Ex. "C," Gates Aff., ¶ 18.

45. Excessing of a substitute is not a termination. Rather, excessing merely means that a substitute is released of their duties at a particular school. The substitute is then free to accept other assignments via the SubCentral System. *See* Ex. "C," Gates Aff., ¶ 19.

46. Indeed from November 2016 until September 2017 the SubCentral System attempted to contact Plaintiff over 1,000 times regarding various assignments, but the calls from the SubCentral System went unanswered. *See* Ex. "B," Ianniello Aff., ¶¶ 11-12.

**D. Grievances**

47. On December 15, 2015 Plaintiff filed an O to Q grievance alleging that because he worked in the same position at the Frederick Douglass Academy from April 2012 through the date of filing, he should have been paid via Q-status instead of O-status. *See* Ex. "J," Dec. 15, 2016 Grievance.

48. On February 12, 2016, an email notice of Plaintiff's O to Q grievance conference was sent to various DOE and union individuals, including Principal Gates. *See* Ex. "K," Email dated February 12, 2016 from Jerilyn Bryant to Joseph Gates, Michael Matthews,

Romaney Ramdal, Robin Kittrel, Karen Solimando, Phyllis Waltuch, Amadou Konteye, and various United Federation of Teachers employees.

49. On March 1, 2016, the grievance conference was held and Principal Gates supported Plaintiff in the conference by confirming that Plaintiff had worked in the vacancy during that time. *See* Ex. "L," Grievance Decision dated March 22, 2016.

50. By decision dated March 22, 2016, the grievance was denied in part and sustained in part. The grievance was deemed untimely for the time period of April 2012 to June 26, 2015 per article 22B3 of the applicable collective bargaining agreement, which provides that the "grievance shall be filed within a reasonable time not to exceed three months after the employee has knowledge of the act or condition which is the basis of the complaint. . . ." *See* Ex. "L," Grievance Decision dated March 22, 2016; Ex. "M," Article 22B-3 from the 2009-2018 Collective Bargaining Agreement of the DOE and the United Federation of Teachers.

51. The grievance was sustained for the period of September 8, 2015 to February 12, 2016. *See* Ex. "A," Benvisto Aff., ¶ 25; Ex. "L," Grievance Decision dated March 22, 2016.

52. Accordingly, Plaintiff was retroactively coded in the DOE payroll systems as Q-status, and as a remedy, received the difference between the O and Q rates of pay for the period of September 8, 2015 to February 12, 2016 in the amount of $14,933.91. *See* Ex. "A," Benvisto Aff., ¶ 26-27.

53. On April 1, 2016, Plaintiff filed a grievance alleging that Principal Gates had terminated him on February 12, 2016 for engaging in union activity. Plaintiff requested that he be returned to his position at the Frederick Douglass Academy and be paid for the remainder of the 2015-2016 school year. *See* Ex. "C," Gates Aff., ¶ 26; Ex. "N," April 1, 2016 Grievance.

54. Principal Gates held a step one conference regarding Plaintiff's April 2016 grievance on April 20, 2016. By letter dated April 20, 2016, Principal Gates denied Plaintiff's grievance because Plaintiff was excessed on February 12, 2016 due to budgetary constraints. Principal Gates determined that union animus did not motivate the decision to excess Plaintiff from the Frederick Douglass Academy. *See* Ex. "O," Letter dated April 20, 2016 from Joseph Gates to Amadou Konteye; *see also* Ex. "C," Gates Aff., ¶ 27.

55. A step two grievance conference was then held on November 28, 2016 regarding Plaintiff's April 1, 2016 grievance. *See* Ex. "P," Grievance Decision dated January 3, 2017; *see also* Ex. "C," Gates Aff., ¶ 28.

56. By decision dated January 3, 2017, Plaintiff's grievance was denied. The decision states that "Grievant Konteye is a day-to-day substitute teacher, was a day-to-day substitute teacher at the time of the alleged violation, and is covered by the Agreement covering Day-to-Day Substitute Teachers, and not the Agreement covering Day School Teachers." *See* Ex. "P," Grievance Decision dated January 3, 2017.

57. The decision concludes that there was no violation of any agreement in place between the DOE and the United Federation of Teachers. Thus, Plaintiff was not terminated on February 12, 2016, but was merely excessed due to budgetary constraints at the Frederick Douglass Academy. *See* Ex. "P," Grievance Decision dated January 3, 2017.

58. Lastly, the decision determined that Q-status is merely a payroll status, and that it "does not convert the teacher to a [Preparatory Provisional Teacher] or [Certified Provisional Teacher] or regular substitute or otherwise provide entitlement to the substitute position through the end of the term." *See* Ex. "P," Grievance Decision dated January 3, 2017.

59. On May 5, 2016, Plaintiff filed another grievance alleging that he had been staffed at the Frederick Douglass Academy for the 2015-2016 school year, but Principal Gates had not responded to his communications. *See* Ex. "Q," May 5, 2016 Grievance.

60. The union did not pursue Plaintiff's May 2016 grievance. *See* Ex. "R," Letter dated May 16, 2016 from Parniece Richardson to Jerilyn Bryant.

### E.  New York State Division of Human Rights Filing

61. Plaintiff filed a charge of discrimination with the New York State Division of Human Rights on February 23, 2016. In his charge of discrimination, Plaintiff alleges that Principal Gates discriminated against him due to his national origin and that Principal Gates terminated him on February 12, 2016 in retaliation for filing a grievance. *See* Ex. "S," New York State Division of Human Rights Verified Complaint, Case No. 10179999.

62. Plaintiff withdrew his New York State Division of Human Rights charge of discrimination on April 5, 2016. *See* Ex. "T," New York State Division of Human Rights, Case No. 10179999, Order of Withdrawal, dated April 6, 2016.

### F.  OEO Complaint

63. On May 15, 2016, Plaintiff filed an internal complaint with the DOE's Office of Equal Opportunity & Diversity Management ("OEO"). In his OEO complaint, Plaintiff alleged that he was terminated from the Frederick Douglass Academy on February 12, 2016 because he is "African." He also alleged that Principal Gates hired other teachers in his place who did not have the requisite licenses. *See* Ex. "U," OEO Complaint, dated May 13, 2016.

### G.  PERB Matter

64. In June 2016 Plaintiff filed an amended complaint with the State of New York Public Employer Relations Board ("PERB") against both the DOE and his union, the United Federation of Teachers. *See* Ex. "V," PERB Amended Complaint, In the matter of Amadou Konteye and Department of Education of the City School District of the City of New York and UFT, ("PERB Amended Complaint"), dated June 10, 2016.

65. In his amended PERB complaint, Plaintiff alleges that Principal Gates retaliated and discriminated against him due to his union activity by terminating him on February 12, 2016. Plaintiff also alleges that the United Federation of Teachers had failed to represent him regarding his allegations against Principal Gates. *See* Ex. "V," PERB Amended Complaint, dated June 10, 2016.

66. PERB held a hearing regarding Plaintiff's allegation against the DOE on March 23, 2017. Plaintiff and Principal Gates testified at the hearing. *See generally* Ex. "F," PERB Transcript.

67. To date, no decision has been rendered resolving Plaintiff's PERB matter.

**H. EEOC Filing**

68. On August 18, 2016, Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). *See* Ex. "W," EEOC Charge, Charge No. 520-2015-02081, dated August 18, 2016.

69. Plaintiff alleges in his EEOC charge of discrimination that the DOE and Principal Gates discriminated against him on the basis of his Senegalese national origin. Plaintiff also alleges that Principal Gates retaliated against him due to his union activity by terminating him on February 12, 2016. Plaintiff lastly alleges that Principal Gates hired white

individuals to fill his position at the Frederick Douglass Academy.  *See* Ex. "W," EEOC Charge, Charge No. 520-2015-02081, dated August 18, 2016.

70. The EEOC issued Plaintiff a right to sue letter dated January 31, 2017. *See* Ex. "X," EEOC Right to Sue Letter, dated January 31, 2017.

### I. The Instant Proceeding

71. Plaintiff initiated the instant proceeding by the filing of the Complaint on April 19, 2017.  *See* Complaint, ECF Doc. No. 2.

72. Plaintiff alleges, among other things, in the Complaint that Principal Gates hired other individuals "over" him.  *See* Complaint, ECF Doc. No. 2, at ¶ "B."

73. In his interrogatory responses, Plaintiff identified twenty-seven individuals who he believes were hired over him.  *See* Ex. "Y," Interrogatory Responses, dated December 29, 2017.

74. However, according to the DOE's computer systems and records, none of the twenty-seven individuals Plaintiff identifies were hired at the Frederick Douglass Academy for a French position or a foreign language position.  *See generally* Ex. "Z," Comparator List.

75. Rather, the twenty-seven individuals were hired for various positions and subject areas for which Plaintiff was either: (a) not certified to teach, (b) was not seeking certification from the State of New York to teach, (c) or had not expressed interest in teaching. *See* Ex. "Z," Comparator List; Ex. "C," Gates Aff., ¶ 12-13.

76. At his deposition Plaintiff was unable to testify to the real or perceived national origin of any of the twenty-seven named individuals allegedly hired over him or what positions for which they were hired.  *See* Ex. "G," Deposition of Plaintiff taken on May 29, 2018, at 124:19-137:25, 195:23-197:25, 198:14-23.

- 15 -

77. Plaintiff also alleges that Principal Gates has prevented him from receiving his professional New York State teaching license because Gates will not sign an OT-37 form for Plaintiff. *See* Complaint, ECF Doc. No. 2, at ¶ "B."

78. An OT-37 form is a form to verify any paid teaching experience an individual performs while seeking a professional teaching license. Ex. "B," Ianniello Aff., ¶ 15.

79. The OT-37 form cannot be signed by a Principal. A Community Superintendent or the Director of the DOE's Human Resources Division may sign an OT-37 form. Ex. "B," Ianniello Aff., ¶ 15.

Dated: New York, New York
September 21, 2018

Respectfully Submitted,

**ZACHARY W. CARTER**
Corporation Counsel of the City of New York
Attorney for Defendants
100 Church Street
New York, NY 10007
(212) 356-3574
ksouliop@law.nyc.gov

By: */s/ Katerina Souliopoulos*
KATERINA SOULIOPOULOS
Assistant Corporation Counsel