UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x

AMADOU KONTEYE,

                                        Plaintiff,

                -against-

NEW YORK CITY DEPARTMENT OF EDUCATION;
JOSEPH D. GATES,

                                        Defendants.

-------------------------------------------------------------------- x

AFFIDAVIT OF JOSEPH
GATES IN SUPPORT OF
DEFENDANTS' MOTION
FOR SUMMARY
JUDGMENT

17 CV 2876 (GBD) (RL)

STATE OF NEW YORK    )
                     ) SS.:
COUNTY OF NEW YORK   )

        **JOSEPH D. GATES** being duly sworn, deposes and says:

        1.      I am employed by the Board of Education of the City School District of

the City of New York, which operates as the New York City Department of Education ("DOE").

        2.      I've been employed by the DOE for a total of twenty-six years. Presently,

I am the Principal of Public School Urban Assembly Academy for Future Leaders. I have served

in this capacity for one year and have been employed as a principal for seventeen years.

        3.      From November 2011 until July 2017, I served as the Principal of The

Frederick Douglass Academy ("The Academy"), located at 2581 Adam Clayton Powell Jr.

Boulevard, New York, NY 10039. In my capacity as Principal of The Academy, I was

responsible for, among other things, the academic and social program for all students in grades

6-12.

4.      I submit this affidavit in support of Defendants' motion for summary judgment.  This affidavit is based on my personal knowledge as well as the books and records maintained by the DOE.

5.      In April 2012, Mr. Konteye began working at The Academy as an occasional per diem substitute teacher.  An occasional per diem substitute teacher is commonly referred to as a "per diem" or "day-to-day" substitute.  Per diem substitutes are individuals available to accept daily assignments at any DOE school.

6.      Over the course of the academic years, 2012-2013, 2013-2014, and 2015-2016, Mr. Konteye continued at The Academy as an occasional per diem substitute teacher.  During those academic years he filled various positions including as a Social Studies teacher, and a French teacher in an unencumbered vacancy.

7.      While Mr. Konteye worked at The Academy on a per diem basis he worked toward master's degrees and initial certification from the State of New York in French and Social Studies.

8.      In June 2014, Mr. Konteye asked me to submit nominations on his behalf to the DOE central offices, believing that it would expedite the receipt of his initial certifications from the State.  I nominated Mr. Konteye for both a social studies teaching position and French teaching position at The Academy for the 2015-2016 school year.  Copies of the nomination letters I created for Mr. Konteye are attached to this affidavit as Exhibits "1-4."

9.      In March 2015 of the 2014-2015 academic year, Mr. Konteye received his initial certifications from the State of New York in social studies/history and French.

10.     At the close of the 2014-2015 school year, I saw indications that enrollment at The Academy for the upcoming 2015-2016 school year would likely fall below

register projections.  Register projections refer to the predicted numbers of students that will be enrolled at a DOE school in a particular academic year.  Register projections are created by the DOE based on the documented admissions patterns of a school over a series of years and determine how much funding a DOE school receives.  School administrators then create a school's programming based on the anticipated funding derived from the register projections. However, if a school's actual enrollment indeed is less than the register projections, the school will have to return funding.

11.     From my experience, I knew that if The Academy were to return funding, it would be necessary to cut non-essential programming.  The French vacancy Mr. Konteye filled as a per diem was identified as a position likely to be cut in the case of returned funding, as well as Physical Education positions.  On the other hand, a social studies/history position would not be affected in the case that The Academy was to return funding.

12.     Consequently, I offered Mr. Konteye a full-time social studies position at The Academy.  I explained the potential funding issues, but to my disbelief Mr. Konteye rejected my offer and insisted that he would like to continue in the French position.

13.     After Mr. Konteye rejected the social studies position, I hired other teachers for social studies positions beginning in the 2015-2016 academic year at The Academy. The teachers I hired for the social studies positions were David Neville and Kim Aime.

14.     I visited the DOE central offices over the summer of 2015 to attempt to maintain The Academy's funding.  I was not successful.

15.     On February 3, 2016 the Budget Division of the Manhattan Field Support Office contacted The Academy via email.  The Budget Division explained that The Academy did not have enough funding to pay the per diem substitutes working at the school at that time.

Attached to the February 3rd email were two screen shots of nineteen substitutes for whom there was no funding. Mr. Konteye's name was included in the screen shots. A copy of the February 3, 2016 email and two screen shots from the Budget Division are attached to this affidavit as Exhibit "5."

16.     The following day on February 4, 2016, the Director of the Budget Division, Ms. Sharon Boonshoft, sent an email following up on the budget issue that was the subject of the February 3rd email. Ms. Boonshoft explained that The Academy could no longer use substitutes for the remainder of the 2015-2016 school year. Ms. Boonshoft also explained that The Academy would have to return over $62,000 in funding. A copy of the February 4, 2016 email is attached to this affidavit as Exhibit "6."

17.     Due to the budget crisis, I met with The Academy's administration and over the next two weeks we re-organized the entire programming of The Academy. Specifically, by combining smaller classes together and cutting non-essential classes, we were able to restructure programming so that Academy teachers would be available to cover any absences for the remainder of the school year. This was a difficult time and meant that all teachers and even administrators had to cover classes and absences. Nonetheless, The Academy was able to prevent the further use of substitute teachers as a result of the re-organization.

18.     Consequently, on February 12, 2016 after the re-organization, I excessed all substitute teachers working at The Academy, including Mr. Konteye.

19.     The term "excessing" means that I discharged the substitutes from The Academy. In no way does excessing mean termination from the DOE. Excessing merely means that the substitutes would be able to accept assignments at other schools from those available on the SubCentral System.

- 4 -

20.     The morning of February 12, 2016, I spoke to each substitute teacher about the budget situation and offered them assistance in the form of a recommendation letter or phone call.

21.     While I spoke to each substitute and informed them they were excessed from The Academy, Mr. Konteye was not in the school building. I understand he was out of the building to pick up an emergency check.

22.     Upon his return to The Academy, I called Mr. Konteye into my office and explained that due to the budget situation, his services would no longer be required for the remainder of the school year. Just as with the other substitutes, I also offered to write him a letter of recommendation. Mr. Konteye was visibly upset and did not accept my offer of a recommendation letter.

23.     Mr. Konteye brought grievances through his union, the United Federation of Teachers, as is his right.

24.     Specifically, Mr. Konteye filed a grievance in December 2015 regarding his pay status at The Academy and I supported him in that grievance. Mr. Konteye alleged in the grievance that from April 2012 to February 2016 he was paid at the per diem rate and should have been paid as a regular long-term substitute.

25.     I confirmed that Mr. Konteye had worked in the French vacancy at The Academy during that time. It is my understanding that the grievance was sustained in part and Mr. Konteye was compensated the difference between the O and Q payroll status for September 8, 2015 to February 12, 2016. A copy of the grievance and grievance decision are attached to this affidavit as Exhibit "7."

26.     On April 1, 2016, Mr. Konteye brought another grievance alleging that I had retaliated against him due to the filing of his December 2015 grievance. He alleged that I terminated him on February 12, 2016 because he had filed the December 2015 grievance. A copy of the grievance filed on April 1, 2016 is attached to this affidavit as Exhibit "8."

27.     I held a step one conference regarding this grievance on April 20, 2016. Mr. Konteye, a union representative, and myself were present at the conference. I denied Mr. Konteye's grievance at the step one conference. I explained again to Mr. Konteye that he was excessed from The Academy due to budget constraints and that no union animus compelled my decision. A copy of the letter memorializing the step one conference is attached to this affidavit as Exhibit "9."

28.     Then on November 28, 2016 I participated in the step two conference concerning the grievance Mr. Konteye filed in April 2016. I explained that Mr. Konteye had been excessed from The Academy on February 12, 2016 due to budgetary shortfalls and that no union animus motivated the decision to excess him. It is my understanding that the grievance was denied after the step two conference. A copy of the grievance decision is attached to this affidavit as Exhibit "10."

29.     Mr. Konteye also filed a complaint with the Public Employer Relations Board of the State of New York ("PERB"). In this proceeding, Mr. Konteye again alleged that I had retaliated against him due to the filing of his December 2015 grievance and retaliated against him by terminating him on February 12, 2016.

30.     I testified in the proceeding before PERB on March 23, 2017. To my knowledge, no decision has been issued.

Dated: New York, New York

September 21, 2018

_____

**JOSEPH D. GATES**

Sworn to before me this

___2 1___ day of September 2018

NOTARY PUBLIC

JOSEPH K. EADY
Commissioner of Deeds
City of New York, No. 3-3593
Certificate Filed in Bronx County
Commission Expires Nov. 1, 2018

# EXHIBIT "1"

# The Frederick Douglass Academy

M 499



Phone: (212) 491-4107
www.FDA1.org

Fax: (212) 491-4414
JGates it schools.nyc.gov

A College Preparatory School

2581 Adam Clayton Powell Jr. Blvd, New York, NY 10039

Joseph D. Gates, Principal

June 13, 2014

New York City Department of Education
Division of Human Resources (DHR)
65 Court Street, Room 102
Brooklyn, NY 11201
(718) 935-4000

To Whom It May Concern:

This letter is to nominate Mr. Amadou Konteye  (File # 2595157; SS # 096840441) for French Language and Social Studies Teaching positions at the Frederick Douglass Academy I (05M499). He has submitted all the required documentation to the New York State Education Department and waiting for his license to be issued. Kindly assist in processing his so that he may start the 2014/2015 school year with our school.

Thank you for your assistance and cooperation in this matter.

Best Regards,

Joseph Gates
Principal

EXHIBIT "2"

Jun. 26. 2014  4:14PM

# THE FREDERICK DOUGLASS ACADEMY

Phone: (212) 491-4107
www.FDA1.org

Fax: (212) 491-4414
JGates@schools.nyc.gov

A College Preparatory School

2581 Adam Clayton Powell Jr. Blvd, New York, NY 10039

Joseph D. Gates, Principal

June 26, 2014

New York City Department of Education
Division of Human Resources (DHR)
65 Court Street, Room 102
Brooklyn, NY 11201
(718) 935-4000

To Whom It May Concern:

This letter is to nominate Mr. Amadou Konteye (File # 2595157; SS # 096840441) for a Social Studies Teaching position at the Frederick Douglass Academy I (05M499). He has submitted all the required documentation to the New York State Education Department and waiting for his license to be issued. Kindly assist in processing his so that he may start the 2014/2015 school year with our school.

Thank you for your assistance and cooperation in this matter.

Best Regards,

Joseph Gates
Principal

# EXHIBIT "3"

# The Frederick Douglass Academy

Phone: (212) 491-4107
www.FDM.org

A College Preparatory School

Fax: (212) 491-4414
JGates@schools.nyc.gov

2581 Adam Clayton Powell Jr. Blvd, New York, NY 10039

Joseph D. Gates, Principal

August 25, 2014

New York City Department of Education
Division of Human Resources (DHR)
65 Court Street, Room 102
Brooklyn, NY 11201
(718) 935-4000

To Whom It May Concern:

This letter is to nominate Mr. Amadou Konteye  (File # 2595157; SS # 096840441) for a Social Studies Teaching position  at the Frederick Douglass Academy I (05M499). He has submitted all the required documentation to the New York State Education Department and waiting for his license to be issued. Kindly assist in processing his so that he may start the 2014/2015 school year with our school.

Thank you for your assistance and cooperation in this matter.

Best Regards,

Joseph Gates
Principal

PERS 00027

# EXHIBIT "4"

# THE FREDERICK DOUGLASS ACADEMY



Phone: (212) 491-4107
www.FDM.org

A College Preparatory School

Fax: (212) 491-4414
JGates@schools.nyc.gov

2581 Adam Clayton Powell Jr. Blvd, New York, NY 10039

Joseph D. Gates, Principal

August 25, 2014

New York City Department of Education
Division of Human Resources (DHR)
65 Court Street, Room 102
Brooklyn, NY 11201
(718) 935-4000

To Whom It May Concern:

This letter is to nominate Mr. Amadou Konteye  (File # 2595157; SS # 096840441) for a French Foreign
Language Teaching position  at the Frederick Douglass Academy I (05M499). He has submitted all the
required documentation to the New York State Education Department and waiting for his license to be
issued. Kindly assist in processing his so that he may start the 2014/2015 school year with our school.

Thank you for your assistance and cooperation in this matter.

Best Regards,

Joseph Gates
Principal

**PERS 00028**

# EXHIBIT "5"

Thank you,
Margarita

**Margarita Zapata**
**Payroll Coordinator**
**The Frederick Douglass Academy I**
**05M499**
**Tel# 212-491-4107 x1761**
**Fax# 212-491-4414**
http://www.fda1.org/

*Each day I will sing with joy about your unfailing love. For you have been my refuge, a place of safety when I am in distress.*        *Psalm 59:16*

**From:** Croft Thomas
**Sent:** Wednesday, February 03, 2016 11:38 AM
**To:** Zapata Margarita
**Cc:** Gates Joseph (05M499); Boonshoft Sharon; Francis Sonia 05m499
**Subject:** Per Diem Payroll Ended 1/15/16

Hi Margarita,

I have been checking the Schools' Per Diem payrolls to ensure everything is proceeding OK. However, when I accessed your Per Diem Timekeeping Roster/Approval screens I see that many of your per diems will not be paid for their work for the period ending 1/15/16 & will not be for the payroll ending 1/31/16 if Job code GUI2F is used. I'm attaching copies of the screens & would like you to watch them in future. Anytime you see a number appearing under the "FD" column that means the job being used doesn't have sufficient funds to pay the per diem for that number of days. As an aside, the downfall, in my view, of the Per Diem System is that it will allow the School to enter & approve the days with no warning other than the "FD" column. Here is what has to be done if the per diems are to be paid: The entries have to be unapproved & deleted. Then have to be re-entered & re-approved using a job with sufficient funds in it.

As far as the payroll period ending 1/31/16 that closes tomorrow, 2/4/16, do not enter any time until you have a job with sufficient funds.

Please late me know if you need any additional information.

Thanks.

Frederick Douglass Academy - A College Preparatory School

**From:** Croft Thomas
**Sent:** Wednesday, February 03, 2016 11:38 AM
**To:** Zapata Margarita
**Cc:** Gates Joseph (05M499); Boonshoft Sharon; Francis Sonia 05m499
**Subject:** Per Diem Payroll Ended 1/15/16

Hi Margarita,

I have been checking the Schools' Per Diem payrolls to ensure everything is proceeding OK. However, when I accessed your Per Diem Timekeeping Roster/Approval screens I see that many of your per diems will not be paid for their work for the period ending 1/15/16 & will not be for the payroll ending 1/31/16 if Job code GUI2F is used. I'm attaching copies of the screens & would like you to watch them in future. Anytime you see a number appearing under the "FD" column that means the job being used doesn't have sufficient funds to pay the per diem for that number of days. As an aside, the downfall, in my view, of the Per Diem System is that it will allow the School to enter & approve the days with no warning other than the "FD" column. Here is what has to be done if the per diems are to be paid: The entries have to be unapproved & deleted. Then have to be re-entered & re-approved using a job with sufficient funds in it.

As far as the payroll period ending 1/31/16 that closes tomorrow, 2/4/16, do not enter any time until you have a job with sufficient funds.

Please late me know if you need any additional information.

Thanks.





Go Green! Please don't print this e-mail unless really needed!

*Tom Croft*
Manhattan Field Support Center
333 7th Avenue, 8th Floor, New York, NY 10001
Telephone: (212) 356-3905
Fax: (212) 356-7546

# EXHIBIT "6"

**From:** Boonshoft Sharon
**Sent:** Thursday, February 04, 2016 11:56 AM
**To:** Gates Joseph (05M499); Francis Sonia 05m499
**Cc:** Croft Thomas; Tafaro Rosemary; Rivera Judith; Edward Tashirah
**Subject:** RE: Per Diem Payroll Ended 1/15/16

Good morning,
As I have discussed with Ms. Francis, this is a huge problem, because there is no way to be able to cover this amount of Per Diem.
I am looking at your Galaxy now, and cannot find enough funding to cover the days that have already been entered.
I will work to create enough funding in one line to cover the 63 days, if possible; but it cannot use GUI2F, because there is not enough to adjust that entire line.
I will get back to you shortly.

HOWEVER----Please note that you must not call in any more Subs – there is no funding to pay for this. As discussed previously, your school programming needs to be reviewed, and teachers need to be able to cover classes where teacher absences occur.
I understand that you spoke with Tashirah Edward concerning getting ATR assignments. We will review with Judith Rivera and Rosemary Tafaro to see if we can find a solution for this issue.

In addition, I will be recapping your Mid Year Adjustment for you once more, and the ASA funds that were advanced to you. We need this $62,758 returned as soon as possible. We need to review your two retirements, which do not have the proper paperwork yet, and must be processed correctly and expeditiously.

I will get back to you today with a line to use for payment of the Subs for January.

Thank you.

Sharon Boonshoft
Manhattan Field Support Center - NYC DOE
Budget Director
333 Seventh Ave.  N.Y. N.Y. 10001
212 356-3893

**From:** Zapata Margarita
**Sent:** Thursday, February 04, 2016 11:13 AM
**To:** Croft Thomas <TCroft@schools.nyc.gov>
**Cc:** Gates Joseph (05M499) <JGates@schools.nyc.gov>; Boonshoft Sharon <SBoonshoft@schools.nyc.gov>; Francis Sonia 05m499 <SFranci2@schools.nyc.gov>
**Subject:** RE: Per Diem Payroll Ended 1/15/16

Hi Tom,

As per your request here is the calculated information regarding the Per Diem subs who worked the 2nd half of January 16-31  2016

The total number of days worked are 63.  There are 11 PDPS Subs and that dollar amount is $10260 18

Thank you,
Margarita

**Margarita Zapata**
**Payroll Coordinator**
**The Frederick Douglass Academy I**
**05M499**
**Tel# 212-491-4107 x1761**
**Fax# 212-491-4414**
http://www.fda1.org/

*Each day I will sing with joy about your unfailing love. For you have been my refuge, a place of safety when I am in distress.*        Psalm 59:16

**From:** Croft Thomas
**Sent:** Wednesday, February 03, 2016 11:38 AM
**To:** Zapata Margarita
**Cc:** Gates Joseph (05M499); Boonshoft Sharon; Francis Sonia 05m499
**Subject:** Per Diem Payroll Ended 1/15/16

Hi Margarita,

I have been checking the Schools' Per Diem payrolls to ensure everything is proceeding OK. However, when I accessed your Per Diem Timekeeping Roster/Approval screens I see that many of your per diems will not be paid for their work for the period ending 1/15/16 & will not be for the payroll ending 1/31/16 if Job code GUI2F is used. I'm attaching copies of the screens & would like you to watch them in future. Anytime you see a number appearing under the "FD" column that means the job being used doesn't have sufficient funds to pay the per diem for that number of days. As an aside, the downfall, in my view, of the Per Diem System is that it will allow the School to enter & approve the days with no warning other than the "FD" column. Here is what has to be done if the per diems are to be paid: The entries have to be unapproved & deleted. Then have to be re-entered & re-approved using a job with sufficient funds in it.

As far as the payroll period ending 1/31/16 that closes tomorrow, 2/4/16, do not enter any time until you have a job with sufficient funds.

Please late me know if you need any additional information.

Thanks.

EXHIBIT "7"

Grievant's Address: 164 West 147th St Apt 2D

New York, NY 10039

Grievant's Phone Number: (212) 562-1653

Date: 12/15/2015

162410

M59848

Lawrence Becker

Acting Chief Executive Officer

Division of Human Resources

65 Court Street

Brooklyn, NY 11201

Dear Mr. Becker:

Pursuant to the terms enumerated under Article 11 of the Collective Bargaining Agreement covering Day-To-Day Substitute Teachers, I request a conference to discuss the following complaint:

I have been covering the same assignment since April 2012 to the present. I have never been made a regular sub and have only been paid as a per diem the entire time.

The above is a violation of Articles 3, 5, and 11.

As a remedy I request all monies owed plus interest and to be made whole in all ways.

I shall be accompanied to this conference by a representative from the UFT Manhattan Borough Office.

Grievant's Signature: AK

Grievant's Name: Konteye, Amadou

File/EIS #: 2595157

School: M499 District: 05

Submitted by: Nick Sckrulz

Case#: DD-004-M59848   AKONTEYE@SCHOOLS.NYC.GOV

**APPEAL TO THE CHIEF EXECUTIVE OFFICER FOR AMADOU KONTEYE,
A SUBSTITUTE TEACHER AT M499, DISTRICT 05, FILE #2595157
OLR # 162410, UFT #M59848**

The conference was held on March 1, 2016

PRESENT:        Amadou Konteye     Grievant
                   John Marvul        UFT Representative

GRIEVANCE:    The grievant claims he was covering the same assignment from April 2012 to February 12, 2016.  He was paid "O" status instead of "Q" status. The UFT states this is a violation of Articles 3, 5 and 11. The grievant would like to be paid the difference between the "O" and "Q" status.

FINDINGS:      This grievance was filed on 12/15/15.  Article 22B3 of the UFT Agreement states that "the grievance shall be filed within a reasonable time not to exceed three months after the grievant has knowledge of the act or condition which is the basis of the complaint."  This grievance did not meet the aforementioned criteria.  Therefore, it must be considered untimely in part for the period 4/2012 through 6/26/2015.  The grievance is sustained from 9/8/15 through 2/12/16. The principal confirmed that the grievant worked in the vacancy during this time.

This grievance is denied in part and sustained in part.

Respectfully submitted,
Robin Kittrell
Chief Executive Officer's Representative

APPROVED:

_Karen Solimando_            _3/22/2016_
Karen Solimando,           Date
(As designee for Lawrence Becker,
Chief Executive Officer, Division of Human Resources)

RK

EXHIBIT "8"

```
GRWPPFR                                                          Page:       1
  4/01/16 16:15:16                Step1 Grievance Form              PRICHARD


AMADOU KONTEYE               SS#: XXX-XX-0441   File#...: 2595157
164 W 147TH ST APT 2D        Member Type: PDO/TRTRD/
NEW YORK, NY 10039-3806      School: M499     District: 05    School Type: JH


646-842-9184                 Case #: M000060504
E-Mail: AMADOUKONTEYE@YAHOO.COM
-----------------------------------------------------------------------------
Step1 Filing Date..:  4/01/16           Et Al Case.....: N
Step1 Deadline Date:  4/08/16           Summer Case....: N
Decision/Date......:                    Step1 Board Rep:
Received Date......:                    Step1 UFT Rep..: MARQUIS A HARRISON
Grievance Type.....: BREG ALL OTHERS    Grieve. School.: M499  FREDERICK DOUGLASS ACAD-M
Status.............: O    OPEN          School District: 05    Type.: JH
Description........: UNION ANIMUS

Contract...........: DD    DAY/DAY SUB. TE  Contract Dates.: 10/13/07 - 10/31/09
Articles...........: 11,2,9
```

Comments
I HAVE BEEN DISCRIMINATED AGAINST BY PRINCIPAL GATES DUE TO MY UNION
INVOLVEMENT.  I WAS TERMINATED ON 2/12/16 AFTER FILING A SALARY
GRIEVANCE.
AS A REMEDY I REQUEST THAT I BE REINSTATED TO MY POSITION AND BE MADE
WHOLE IN ALL WAYS.


Grievant's Signature: _____

** END OF REPORT **

EXHIBIT "9"

U.S. Postal Service ™
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

**OFFICIAL USE**

| | |
|---|---|
| Postage | $ 6.00 |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 6.00 |

Postmark Here

Sent To Amadou Konteye
Street, Apt. No.; 164 West 147th Street #2D
or PO Box No.
City, State, ZIP+4 New York NY 10039

PS Form 3800, August 2006          See Reverse for Instructions

Phone: (212) 491-4107
www.FDA1.org

A College Preparatory School

Fax: (212) 491-4414
JGates@schools.nyc.gov

Powell Jr. Blvd, New York, NY 10039

April 20, 2016

Amadou Konteye
05M499
Case #:M000060504

Dear Mr. Konteye,

You filed a grievance on April 1, 2016 claiming that your rights pursuant to Article(s) 11, 2, 9 of the collective bargaining agreement were violated when you were discriminated against by the Principal due to union involvement after filing a salary grievance.   On April 20, 2016 at 9:12AM, I met with you and your union representative, District 5 UFT Representative, Zina Burton, to discuss your grievance.

I deny your grievance because you failed to demonstrate that your excessing violated Article(s) 11 ,2, 9 of the collective bargaining agreement.  Your excessing was the result of budgetary issues.

Sincerely,

Joseph D. Gates
Principal

_____
Amadou Konteye

_____
Date of receipt of decision

D_000805

# EXHIBIT "10"

GRIEVANCE DECISION

(OLR #160809, UFT #M60504)

| | |
|---|---|
| Grievant: | Amadou Konteye |
| Title: | Day-to-Day Substitute Teacher |
| Union: | UFT |
| School or Office/District: | Frederick Douglas Academy/District 5 |
| Articles/Agreement: | Article 2(Fair Practices) |
| | Article 5C3 (Provisional Teachers) |
| | Article 17(Retention, Excessing and Layoff) |
| | Article 20(Matters Not Covered) |
| | Article 22(Grievance Procedure) |
| Nature of Grievance: | The grievant was discriminated against due to Union Involvement. |
| Date of Conference: | November 28, 2016 |
| Persons in Attendance: | Amadou Konteye, Grievant |
| | Parneice Richardson, UFT Representative |
| | Eleanor Radzivilover, Superintendent's Representative |
| | Joseph Gates, Principal (by telephone) |

The grievant or his representative stated that the following occurred and argued that the cited provisions of the Agreement were violated for the following reasons:
Grievant Konteye was a Day-to-Day Substitute Teacher who served four years prior to his discharge on 2/12/16. Grievant Konteye was terminated by Principal Gates on 2/12/16 for Union activities, specifically, because he filed a payroll grievance on 12/15/15. Grievant Konteye asserts this is Union Animus and a violation of Article 2(Fair Practices). Grievant Konteye asserts that this is a further violation of Article 5C3 (Provisional Teachers) of the Day School Teachers Agreement because he was not retained for the duration of the term. The Union asserts that the fact that Grievant Konteye was moved from 'O' pay status to "Q" pay status as a result of the grievance decision dated 3/1/16, this also changes his status from day-to-day substitute to that of a provisional teacher. Provisional Teachers are covered by the Day School Teacher Agreement, and therefore, Grievant Konteye is also covered by the Day School Teacher Agreement. Article 17(Retention, Excessing and Layoff), also of the Day School Teachers Agreement was violated because Grievant Konteye was not retained in his position or removed from it according to the rules in this Article. The Union requests that the chancellor's representative return Grievant Konteye to service, award him the balance of the days for the full term he should have been allowed to work. Those days are from 2/12/16 to 6/26/16

Administration stated that the following occurred and argued that the cited provisions of the Agreement were not violated for the following reasons:
Grievant Konteye admitted that he was a Day-to-Day Substitute teacher at the time of the alleged violation. As such, he is covered by the Agreement covering Day-to-Day substitute teachers and not by the Agreement covering Day School Teachers. Grievant Konteye is not a member of the

bargaining unit covering day school teachers, and is not entitled to claim a violation of the Agreement . Principal Gates asserted at the conference that he did not terminate Grievant Konteye. Principal Gates had received a budgetary memo on 10/31/15 advising him that he had no money available for the spring term to hire substitutes and as a consequence, he had to cover vacancies and absences in-house. No day-to-day substitute teacher was hired after 2/12/16. Grievant Konteye did not lose the ability to work for the DOE. He only was not hired to fill a local vacancy. There was no Union animus. This was a simple matter of budgetary exigencies that did not enable Frederick Douglas Academy to hire any day-to-day substitute.

The undersigned concludes that the following occurred and concludes that the cited provisions of the Agreement were not violated because:
As an initial matter, the Union has improperly cited Articles from the Day School Teachers Agreement. Grievant Konteye is a day-to-day substitute teacher, was a day-to-day substitute teacher at the time of the alleged violation, and is covered by the Agreement covering Day-to-Day Substitute Teachers, and not the Agreement covering Day School Teachers. The provisions of that Agreement have not been violated. The Union claimed that the Provisions of the Day School Teacher Agreement apply, by virtue of the fact that Grievant Konteye was paid on 'Q' status and as such is entitled to status under the Day School Teacher Agreement. Article 5C3 defines the certification requirements for certification as either a Certified Provisional Teacher (CPT) or a Preparatory Provisional Teacher (PPT). Grievant Konteye did not meet the certification requirements as either a PPT or CPT. Consequently, Grievant Konteye is not entitled to benefits under Article 5C3. Moreover, a teacher may be eligible for Q status – which is only a payroll status—however that does not convert the teacher to a PPT or CPT or regular substitute or otherwise provide entitlement to the substitute position through the end of the term. Indeed, the stipulation in Case No. 1339-2664-07 provides for Q payroll status but does not provide rights to a positon/term; thus, the union's claim far exceeds what was previously negotiated between the parties. Accordingly, the undersigned concludes that there has been no violation of the cited provisions of the Agreement and the grievance is denied.

<div style="margin-left:auto">

Heard by:
ALAN R. LICHTENSTEIN,
Chancellor's Representative

</div>

APPROVED:

*Carmen Fariña*          1/3/2017

CARMEN FARIÑA,          dated
CHANCELLOR
AL